Estate of Louis F. Buff, Deceased, Henry J. Burn, Administrator c.t.a., d.b.n. v. Commissioner.
Estate of Louis F. Buff v. Commissioner
Docket No. 6489.
United States Tax Court
1945 Tax Ct. Memo LEXIS 16; 4 T.C.M. (CCH) 1130; T.C.M. (RIA) 45375; December 14, 1945
*16 Certain sums received by taxpayer in the years 1929 through 1935, from his wholly owned corporation as the proceeds of the sales, repairs, and rental of surveying instruments and deposited in various bank accounts which taxpayer used for personal expenses and investments, held, dividends to taxpayer and therefore not subject to normal tax in said years. Held, further, that sums similarly received by taxpayer from the corporation in the years 1936 through 1940, after all the stock of the corporation had been transferred to a trust, of which taxpayer was the active trustee and a beneficiary, were income to taxpayer and were not embezzlements. Held, finally, that no deduction is allowable for a claimed bad debt for the year 1930. Faneuil Adams, Esq., for the petitioner. J. T. Haslam, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This case concerns income tax deficiencies for the calendar years 1929 to 1940, inclusive, in the following amounts: 1929
$ 22,013.70
1930
8,735.00
1931
5,617.05
1932
812.74
1933
1,262.18
1934
6,606.27
1935
12,529.22
1936
21,687.10
1937
10,469.32
1938
3,056.74
1939
6,693.88
1940
7,797.70
Total
$107,280.90
The deficiencies result principally from the inclusion in decedent's gross income of certain sums received or withdrawn by decedent from a corporation of which, at least prior to December 28, 1935, he was the sole stockholder, and in part from the disallowance of deductions for some 46 items of claimed bad debts and worthless stocks and other property. Of these latter items, respondent, prior to *18 the hearing, agreed to allow some eight or nine, and petitioner abandoned all the rest except one item of approximately $22,000 claimed as a bad debt for 1930. In making his determination, respondent relied on Section 276(a) of the Revenue Acts of 1928, 1932, 1934, 1936 and 1938, and of the Internal Revenue Code, which permits the assessment or collection of tax at any time in the case of false or fraudulent returns filed with intent to evade tax. No fraud penalties were asserted, however, because of the death of Louis F. Buff. The issues before us are: (1) whether the sums included in decedent's gross income in the years 1929 to 1935, inclusive, were dividends received from the corporation, so as to entitle decedent to a credit therefor against net income for normal tax purposes under Section 25(a)(1) of the Revenue Act of 1934, and corresponding provisions of earlier Acts; (2) whether the sums included in decedent's gross income in the years 1936 to 1940, inclusive, constituted income to him, it being claimed that they were embezzlements by decedent; and (3) whether a deduction is allowable for a claimed bad debt for the year 1930. Findings of Fact Petitioner is the duly appointed *19 administrator c.t.a., d.b.n. of the estate of Louis F. Buff, who died a resident of Massachusetts on August 29, 1941. The returns for the period involved were filed with the collector for the district of Massachusetts. During the years in question Louis F. Buff was president of Buff & Buff Manufacturing Company, a corporation engaged in the manufacture of surveying instruments, and prior to December 28, 1935, owned all the stock in the company. He received from the corporation the proceeds from the sale of certain surveying instruments, repairs, and rentals of surveying instruments, in the net amounts determined by the respondent as follows: 1929
$129,383.77
1930
58,880.72
1931
44,275.83
1932
17,391.67
1933
11,658.72
1934
41,077.84
1935
55,262.44
1936
79,258.11
1937
52,729.07
1938
25,422.49
1939
40,875.22
1940
40,627.47
These sums were deposited in various Massachusetts banks and were used by the decedent for his own personal investments and personal expenses. They were not reported by him in his individual returns. On December 28, 1935, Louis F. Buff, his brother Henry A. Buff, and Miss Mary L. McAllister executed an agreement whereby *20 Louis, as "donor", transferred to himself and the other two, as "trustees", 100 shares of the common stock of the Buff & Buff Manufacturing Company (the same being all of the capital stock of the company). It was provided that the trust should be irrevocable. The trustees were to hold the stock, collect the dividends and other income and dispose of said income - "* * * as the Trustees in their sole discretion deem meet, it being the intention of the donor that said income shall be used primarily as a reserve to perpetuate the business of Buff & Buff Manufacturing Company and the Trustees in their discretion may advance money to the Buff & Buff Manufacturing Company for any plant improvements and for such other requirements as the Buff & Buff Manufacturing Company may require from time to time and the Trustees in their sole discretion may make monthly gifts to LOUIS F. BUFF and to the family of said LOUIS F. BUFF, said family to include the wife of LOUIS F. BUFF, his children and any issue thereof, from any income received by them as Trustees. Any of the family of said LOUIS F. BUFF receiving said gifts shall be required to sign upon receipt of said gift a general release of any claims *21 that said donee may have against any or all of said Trustees. The gifts to be made by the Trustees to LOUIS F. BUFF and the family of LOUIS F. BUFF may be made in such proportions as the TRUSTEES deem meet and in their discretion and TRUSTEES may make gifts to one or more of the above persons without making gifts to the other above named persons." It was provided that in all questions arising under the trust the majority of the trustees should determine the action to be taken; but Louis F. Buff retained the sole power to direct the sale or investment and reinvestment of the trust estate and the voting of the stock, to determine the compensation of the trustees, and to nominate his successor in case of his death. The trust was to continue until the death of the last survivor of the group consisting of Mrs. Louis F. Buff and the then living children of Louis F. Buff, at which time it was to cease and the assets were to be transferred to a corporation then to be organized by the three trustees, the stock of which corporation would be equally divided among the trustees. At the time the trust agreement was executed the stock of Buff & Buff Manufacturing Company, in one or more certificates, *22 was endorsed in blank, folded up with the agreement, and placed in the safe at the company, where it was found upon Louis F. Buff's death. Henry A. Buff knew of the trust only in a general way and did nothing in connection with it. Louis F. Buff, so long as he lived, was the active trustee and managed and directed the trust. Henry did not know that Louis had withdrawn funds from the corporation. In his individual returns Louis F. Buff reported salary from Buff & Buff Manufacturing Company in an average amount of $5,600 a year, together with salaries from other sources. Earned income credits were allowed in respect of the salaries in the years in which such credits were provided for by statute. No earned income credits have been allowed in respect of the disputed sums received or withdrawn by Louis F. Buff from the company. Respondent has assessed Buff & Buff Manufacturing Company income taxes based upon the same amounts which he has included in the income of Louis F. Buff. After the death of Louis F. Buff, petitioner either found among his papers and effects or received from the executrix or her attorney a number of notes and canceled checks. Among them were eight notes payable *23 to Henry A. Buff, in one instance one month after date, and in the others on demand. They were dated in January, February, and March of 1926 and totalled $14,150. They were made by Seeley & Co., Inc., signed by E. R. Seeley as president, and in one instance countersigned by L. F. Buff, as treasurer. Also, there were eight demand notes and one 60-day note of Seeley & Co., Inc., payable to Louis F. Buff, dated in February, April, and May of 1926, totalling $8,167.20. In one instance the note was signed by L. F. Buff as president of Seeley & Co., Inc. Seven of these notes were in Louis F. Buff's handwriting. None of the 17 notes bears any indication of payment, and no evidence of payment was found in Louis F. Buff's papers and effects. Among the canceled checks which came into petitioner's possession as administrator were 14 checks payable to Seeley & Co., Inc., dated in October, November, and December of 1925, and January, February, and March of 1926, totalling $19,666.50. The checks were drawn on various Boston banks, some signed by "L. F. Buff" individually, some by L. F. Buff, as "Trustee R. E. Account" or as "Tr. Rox, R. E. Acct.," and others signed "Henry A. Buff, by L. E. Buff, *24 Power of Atty." There were also eight checks payable to the American Outdoor Advertising Co., Inc., dated in January, February, March, May, June, and September of 1929, totalling $2,600. Seven of these were signed "Buff & Buff Mfg. Co., by L. F. Buff, Asst. Treas." and one was signed "L. F. Buff, Trustee R. E. Account." Seeley & Co., Inc., was an outdoor advertising company incorporated under the laws of Massachusetts August 22, 1924. Its name was changed to American Outdoor Advertising Co. on May 28, 1926, and it was dissolved in 1930. Its assets were sold for an amount insufficient to pay its current debts. Henry A. Buff was associated with his brother Louis in business for many years and is still connected with Buff & Buff Manufacturing Company. Until about a week before the hearing in this case he had never seen or heard of the eight notes of Seeley & Co., Inc., payable to him. He did not lend or advance to Seeley & Co. any money for which the notes were given and the company did not owe him the money evidenced by the notes. Nor had he seen or heard of any of the checks payable to Seeley & Co. and signed "Henry A. Buff, by L. F. Buff, Power of Atty." He had never given Louis *25 a power of attorney to write checks on an account in his name in the bank on which said checks were drawn. He knew that Louis was giving or lending money to Seeley Co. Henry himself lent Seeley Co. $1,980 in January 1926, by giving the company his personal check at the request of his brother. He made no effort to collect from the company in 1926 because he knew it was still borrowing money. Petitioner claimed as a deduction for bad debts for the year 1930 the total of the 17 notes of Seeley Co., Inc., or $22,317.20, and respondent refused to allow the deduction. Opinion ARUNDELL, Judge: Petitioner does not dispute that the sums included by respondent in decedent's gross income for the years 1929 to 1935, inclusive, were income to decedent but contends only that they were dividends. We think petitioner must be sustained on this issue. During all those years decedent was the sole stockholder of Buff & Buff Manufacturing Company. It is true that we do not have the books of the corporation before us and that there is no evidence in the record to show whether or not the corporation had accumulated earnings or earnings during each of the taxable years, but it is admitted in the pleadings *26 that respondent has assessed the corporation income taxes based upon the same amounts included in decedent's gross income. Furthermore, petitioner makes no claim that these sums constituted either loans or a return of capital. It is obvious also that respondent has not treated them as salaries because he allowed no earned income credit in connection with them, whereas, in the years in which such credit was provided for by statute, he did allow it in connection with $5,600 salary reported by Louis F. Buff as being received from the corporation. Also, the fact that he has taxed the corporation on the same sums is a further indication that he did not treat the sums as salaries or bonus. In a number of similar situations it has been held that withdrawals by sole or principal stockholders constituted dividends even though there was no formal declaration of dividends. See ; ; . Petitioner should therefore be allowed a dividend credit against net income for normal tax purposes in each of the years 1929 through 1935, under Section 25(a)(1) of the Revenue *27 Act of 1934, and corresponding provisions of earlier Acts. Petitioner contends that the withdrawals by Louis F. Buff in the years 1936 through 1940, which respondent has included in gross income, constituted embezzlements by decedent and therefore were not income to him. Petitioner makes a distinction between the period before 1935 and that after 1935 on the ground that upon the execution of the trust agreement petitioner was no longer the sole stockholder of the corporation. Regardless of whether embezzled money constitutes income to an embezzler - a question not yet definitely settled (see , cert. granted October 8, 1945, - U.S. -; cf. ) - there is no evidence before us from which we can find as a fact that the disputed sums were embezzled. Certainly we cannot presume that they were. For aught that we know from the record before us, the monies may have been first distributed to the trust as a dividend on the stock and then paid over to Louis F. Buff. We have neither the books of the trust, if any, nor those of the corporation. Louis apparently retained such powers under the *28 trust that he could have had all the income distributed to himself. He was the active trustee and managed the trust. Henry Buff, one of the other trustees, had nothing whatever to do with the trust from the time of its creation until the death of Louis. We see no sufficient reason for making any distinction between the years after 1935 and those before that time and therefore hold that the respondent did not err in treating the disputed sums as income to the decedent in the years 1936 through 1940. The remaining issue relates to the claimed bad debt of the American Outdoor Advertising Company. Petitioner has placed in evidence the 17 notes payable to that concern (under its former name of Seeley & Co., Inc.) and the series of checks payable to it. It is argued that Louis F. Buff had a number of accounts in different banks which he used for his investments; that he carried these accounts under different names and descriptions; and that since Henry Buff had no account in which he had given Louis a power of attorney, it must be presumed that all the funds on which the several checks were drawn were Louis' own funds. It is argued also that since Henry Buff did not advance to the advertising *29 company the money for which the notes payable to him were given, it must be presumed that Henry was a mere nominee and that the notes were in reality the property of Louis. Only two witnesses testified - the administrator and Henry Buff. Neither of them knew anything about the transactions which gave rise to the notes or to the checks. Miss McAllister, who was described as Louis Buff's "right hand man" and who was said to be still employed at Buff & Buff Manufacturing Company - the only person who may have been able to throw some light on the entire matter - was not even called to testify. It is observed also that there is no particular connection between the notes and the checks either as to amount or as to time. It may be that in an ordinary case we could presume a regularity in business transactions and treat the notes as prima facie evidence of indebtedness and the checks as prima facie evidence of advancements to the advertising company; but in this case, where it is admitted that the taxpayer over a period of a great many years had consistently been defrauding the government, we are unwilling to indulge such a presumption in his favor. We think that petitioner has not even *30 proved the existence of a debt. Even assuming, however, that there was a debt from the advertising company to decedent, we think petitioner has not sustained his burden of proving that he was entitled to a deduction for the year 1930. The applicable statute requires that the debt be ascertained to be worthless and charged off in the taxable year. Petitioner argues that the checks paid to the advertising company in 1929 show that it was still operating and that decedent was still making advances to it. He further argues that, since the company was dissolved in 1930 and since decedent made a statement to his lawyer in 1931 that there were no assets of the company and the charter had been given up the year before, there was an ascertainment of worthlessness of the debt in 1930. We think there is no sufficient evidence of an ascertainment of worthlessness of the debt in 1930. The debt may very well have been worthless in a year prior thereto and, if not then ascertained to be worthless and charged off, the facts may have been such that decedent should have known that it was worthless. Cf. . Henry Buff testified that in 1926 he made no *31 attempt to collect a debt which the advertising company owed him, because he knew that even then the company was still borrowing money. Whatever the facts may have been, however, we have no way of knowing them. Petitioner has not proved the statutory elements which would entitle him to a bad debt deduction for the year 1930, and respondent is therefore sustained on this issue. Decision will be entered under Rule 50.